Markowitz, P. J.
(concurring). I concur in the Per Curiam but would like to add the following observations.
The subject matter of this case was highly sensational forcing the participants to operate in a charged atmosphere rather than the calm almost cloistered climate of the routine civil courtroom. However, since this State has not closed the door on all actions merely because sexual relations are part of the core facts, and does permit civil prosecutions where the wrong alleged is grounded on conventional tort (Tuck v Tuck, 14 NY2d 341) there is no question that the facts adduced in this record were properly presented to the jury as a possible basis for malpractice which had a causal connection to plaintiff’s subsequent psychotic episodes.
While cultists expound theories of the beneficial effects of *895 sexual psychotherapy, the fact remains that all eminent experts in the psychiatric field including the American Psychiatric Association abjure sexual contact between patient and therapist as harmful to the patient and deviant from accepted standards of treatment of the mentally disturbed.
Dr. Ernest Jones, in his encyclopedic treatment of "The Life and Work of Sigmund Freud” (New York, Basic Books, Inc. 1953) sets forth (vol 3, p 163) a letter written by Freud to a colleague which is relevant to the discussion here.
It reads in pertinent part as follows:
"13. XII. 1931
"Lieber Freund: * * *
"* * * You have not made a secret of the fact that you kiss your patients and let them kiss you * * *
"Now I am assuredly not one of those who from prudishness or from consideration of bourgeois convention would condemn little erotic gratifications of this kind. * * * But that does not alter the facts * * * that with us a kiss signifies a certain erotic intimacy. We have hitherto in our technique held to the conclusion that patients are to be refused erotic gratifications. You know too that where more extensive gratifications are not to be had milder caresses very easily take over their role, in love affairs, on the stage, etc.
"Now picture what will be the result of publishing your technique. There is no revolutionary who is not driven out of the field by a still more radical one. A number of independent thinkers in matters of technique will say to themselves: why stop at a kiss? Certainly one gets further when one adopts 'pawing’ as well, which after all doesn’t make a baby. And then bolder ones will come along who will go further to peeping and showing — and soon we shall have accepted in the technique of analysis the whole repertoire of demiviergerie and petting parties, resulting in an enormous increase of interest in psychoanalysis among both analysts and patients. The new adherent, however, will easily claim too much of this interest for himself, the younger of our colleagues will find it hard to stop at the point they originally intended, and God the Father Ferenczi gazing at the lively scene he has created will perhaps say to himself: may be after all I should have halted in my technique of motherly affection before the kiss.
"Sentences like 'about the dangers of neocatharsis’ don’t get very far. One should obviously not let oneself get into the *896 danger. I have purposely not mentioned the increase of calumnious resistances against analysis the kissing technique would bring, although it seems to me a wanton act to provoke them. * * *
With cordial greetings Your Freud”
Thus from the font of psychiatric knowledge to the modern practioner we have common agreement of the harmful effects of sensual intimacies between patient and therapist.
Of interesting note is an annotation entitled Civil Liability of Doctor or Psychologist for Having Sexual Relationship With Patient (Ann 33 ALR 3d 1393), in which the notewriters state: "Apart from Nicholson v Han [12 Mich App 35, a case whose facts are not applicable here] research has failed to disclose any case in which the courts have discussed or passed upon the civil liability of a doctor or a psychologist, as such, who, while the doctor-patient relationship subsisted, had established a sexual relationship with a patient.” However, where the sexual contacts are themselves the prescribed course of treatment and where such treatment is outside of accepted professional standards, what remains is a simple malpractice action as to which research would be merely cumulative.
On the question of punitive damages, such recovery is allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him as well as others, from indulging in similar conduct in the future. (Walker v Sheldon, 10 NY2d 401, 404.) ■
In the instant case all that has been established is professional incompetence. It was established that plaintiff was influenced to participate on a theory that it would solve her problems.
Sex under cloak of treatment is an acceptable and established ground for disciplinary measures taken against physicians either by licensing authorities or professional organizations (see Ann 15 ALR 3d 1179). Whether defendant acted in such manner as to seriously affect his performance as a practitioner in the psychiatric field should be left to these more competent fora, rather than by seeking deterrence by way of punitive damages. The only thing that the record herein supports is that his prescribed treatment was in negligent disregard of the consequences. For that, and that alone, *897 he must be held liable.